PANGBORN v. WESTLAKE *et al.*

1. **Statute : EFFECT OF STATUTE PENALTY.** While, as a general rule, a penalty prescribed by statute for the doing of an act implies a prohibition which will render the act void, yet this is not always so, and in every instance courts will look to the language and subject-matter of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished by the enactment, and if, from all these, it is manifest that it was not intended to render the prohibited act void, the courts will so hold and construe the statute accordingly.

2. —— **APPLICATION OF RULE.** Applying this rule, it is held that section 1027 of the Revision, which provides a penalty of $50 for selling any lot in a town or addition thereto before the plat thereof is recorded, does not render void a note given for the purchase-money of lots so sold.

3. —— **RULE OF CONSTRUCTION.** Where the legislature of one State adopts a statute of another State and which has there received a judicial construction, courts of the State adopting the statute will follow such construction.

*Appeal from Jackson Circuit Court.*

WEDNESDAY, JUNE 11.

ACTION to foreclose a mortgage given by Westlake and wife to Pangborn, to secure the payment of the following note:

"$1,070.                          MAQUOKETA, *March* 13, 1871.

"One year after date I promise to pay to J. Pangborn, ten hundred and seventy dollars, with interest at the rate of ten per cent per annum, value received. This note is given as payment for lots Nos. 9, 10, 11, 12, 13 and 14, of Block No. 1, of J. Pangborn's contemplated addition to the city of Maquoketa, Iowa; said addition is not yet recorded.

"WELLING WESTLAKE."

The mortgage was upon the same lots as specified in the note, and also stated that they were "in Pangborn's *contemplated* addition to Maquoketa," etc., and provided that "no general execution shall ever issue on this mortgage or note it is given to secure." One William Didway was also made defendant, as claiming an interest in or lien on the property under Westlake. The mortgage was duly recorded on March 20, 1871, and the plat of Pangborn's addition was duly recorded October 7, 1871. The defendant Westlake, by his answer, admitted the due execution of the note and mortgage, and that the same was executed to secure the purchase-money of the real estate therein described; and also averred that the sale and conveyance of said real estate made by plaintiff to defendant was illegal and contrary to the statute; that the lots sold were embraced in an addition to Maquoketa, which was laid out and platted prior to the sale, but was neither acknowledged or recorded, or filed for record previous to the sale as required by law. To this answer the plaintiff demurred, because the matters contained therein did not constitute any defense to the action. The demurrer was sustained by the court. The defendant appeals, and here assigns that ruling as error.

*J. S. Darling* and *Charles Rich* for the appellant.

*Amos & Fletcher* for the appellee.

COLE, J. — The single question presented by the demurrer is, whether the contract for the sale of a lot in a town or city, or addition thereto, the plat of which has not been recorded, is void, so that no right of action can be based thereon. Our statute enacts (Rev., § 1027): " That any person or persons who shall dispose of, or offer for sale or lease, for any time, any out or in lots, in any town, or addition to any town or city, or any part thereof, which has been or shall hereafter be laid out, until the plat thereof has been duly acknowledged and recorded, as provided for in chapter 41 of the Code of Iowa, shall forfeit and pay $50 for each and every lot or part of lot sold or disposed of, leased or offered for sale."

There is no doubt that the well-settled general rule is that when a statute prohibits or attaches a penalty to the doing of an act, the act is void and will not be enforced, nor will the law assist one to recover money or property which he has expended in the unlawful execution of it; or, in other words, a penalty implies a prohibition though there are no prohibitory words in the statute, and the prohibition makes the act illegal and void. *Bartlett* v. *Vinor*, Cath. 252; *Lyon* v. *Armstrong*, 6 Vt. 219; *Robeson* v. *French*, 12 Metc. (Mass.) 24; *Gregg* v. *Wyman*, 4 Cush. 322; *Patee* v. *Greely*, 13 Metc. (Mass.) 284; *Ætna Ins. Co.* v. *Harvey*, 11 Wis. 374; *Midland* v. *Larson*, 19 id. 463; *Pike* v. *King*, 16 Iowa, 50, and cases cited; *Cope* v. *Rowlands*, 2 Mees. & Welsb. 149, and very numerous other cases there cited. But, notwithstanding this general rule, it must be apparent to every legal mind, that when a statute annexes a penalty for the doing of an act, it does not *always* imply such a prohibition as will render the act void. Suppose, for instance, the act itself expressly provided that the penalty annexed should not have the effect of rendering the act void. Surely in such case the courts would not give such force to the legal implication, under the general rule above quoted, as to

override the express negation of it in the statute itself. Then, upon this conclusion, we are prepared for the next step, which is equally plain, that if it is manifest from the language of the statute, or from its subject-matter and the plain intent of it, that the act was not to be made void, but only to punish the person doing it with the penalty prescribed, it is equally clear that the courts would readily construe the statute in accordance with its language and its plain intent. We are, therefore, brought to the true test, which is, that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold, and construe the statute accordingly. The following cases will abundantly vindicate, as well as illustrate this statement of the law. *Ferguson* v. *Norman,* 5 Bingham's New Cases, 76 (opinion of TINDAL, C. J., p. 83); S. C. in 35 E. C. L. Rep. 51 (*i. e.* 55); *Harris* v. *Runnels,* 12 How. (U. S.) 79; *Johnson* v. *Hudson,* 11 East, 180; *Brown* v. *Duncan,* 10 Barn. & Cress. 98; *Hodgden* v. *Temple,* 5 Taunt. 181; *Fockler* v. *Ford et al.,* 24 How. (U. S.) 322; *The Oneida Bank* v. *The Ontario Bank,* 21 N. Y. 490 (see opinion by COMSTOCK, C. J., on p. 495).

We are relieved from the necessity of making an analysis of and construing our statute as an original interpretation of it, because our statute above quoted, like our general municipal incorporations act, was taken from the Ohio statute, and is essentially the same as that. See Swan's Rev. Stat. of Ohio, Derby's edition 1854, § 10, p. 940. Prior to our adoption of that statute, it had received a judicial construction by the supreme court of that State, and it was held that the penalty did not render the contract illegal, so as to prevent a recovery by the vendor of the consideration agreed to be paid by the vendee, for a lot sold him prior to the proper survey and making and recording of the plat. *Strong, etc.,* v.

*Darling*, 9 Ohio, 201. And it is a well-settled rule that when the legislature of one State adopts a statute from another which has received judicial construction there, such construction will be presumed to have been known to and approved by the legislature, and will be followed by the courts of the State adopting the statute. See *Bemis* v. *Becker*, 1 Kan. 226 (*i. e.* 249), where the rule was applied to a statute like the one now in question. Under this rule we must hold that the note and mortgage in this case are not illegal and may, therefore, be enforced.

There are two cases in Missouri, to which our attention has been called, construing a statute similar to ours: *Downing* v. *Kinger*, 7 Mo. 585, and *Mason* v. *Pitt*, 21 id. 391. In the former, and apparently without much investigation, it was held, under the general rule first above stated, that the penalty rendered the contract illegal, and that the vendor of a lot in an unrecorded plat could not, under the Missouri statute, recover from the vendee the consideration agreed to be paid therefor. In the last case it was held, that the failure to record the plat, prior to the conveyance, did not prevent the title from passing to the vendee. The Kansas court, in *Bemis* v. *Becker*, *supra*, followed the last, without referring to the former.

But, further than this, the question has been, in effect, determined by this court in *Watrous & Snouffer* v. *Blair*, 32 Iowa, 58, where it was held, that the vendees of certain lots, having, as in this case, actual knowledge that at the time of their purchase the plat had not been recorded, were entitled to a specific performance, by their vendor, of their contract of purchase. Surely, we could hardly be expected to compel a vendor to convey, and then to deny him the right to recover the consideration for such conveyance. In that case we required the conveyance to the vendee; in this, we enforce the payment by the vendor.

Affirmed.